UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60253-KMM

UNITED STATES of AMERICA,

    Plaintiff,

v.

LAWRENCE ALEXANDER,

    Defendant.

_____/

**LAWRENCE ALEXANDER'S SENTENCING MEMORANDUM**

    Defendant Lawrence Alexander, through counsel, respectfully submits this memorandum addressing sentencing in his case.

*18 U.S.C. § 3553(a) Sentencing Factors*

    In reaching an individualized sentencing decision, *see Koon v. United States*, 518 U.S. 81, 113 (1996), regarding the least restrictive sentence necessary under 18 U.S.C. § 3553(a)(2), the Court may conclude that a guideline sentence is "greater than necessary to serve the objectives of sentencing." *Kimbrough v. United States*, 552 U.S. 85, 91, 101 (2007). Notably, the U.S. Sentencing Commission approved, on April 5, 2023, a two-level reduction in the guideline offense level applicable to defendants who have zero criminal history points and meet other conditions (all met by the defendant in this case). The new guideline reduction is scheduled to become mandatory on November 1, 2023. *See* https://www.ussc.gov/guidelines/amendments/adopted-amendments-effective-november-1-2023; *see also* United States Sentencing Commission News Release, April 5, 2023, https://www.ussc.gov/about/news/press-releases/april-5-2023. The approved guideline

amendment, under U.S.S.G. § 4C1.1,[1] exemplifies a finding that the guideline range may be greater than necessary.   Additional factors discussed in this memorandum, including the attached letters from those who know of Lawrence Alexander's life story, his contributions to the health and recovery of persons with spinal injuries (including not just athletes, but people from all walks of life), and the steps he has taken since the events in this case to be a better person, are relevant to sentencing and also a sentence below the guideline sentencing range.

*History and Characteristics of the Defendant*

Lawrence Alexander's life story is related in the presentence report.  He was raised

---

[1]  Congress has not rejected a proposed guideline amendment since 1995, with regard to the crack/powder disparity.  And even as to that one rejection in the 35-year history of the guidelines, Congress later provided even greater relief statutorily.  The Sentencing Commission explains the new guideline as follows:

> Part B of the proposed amendment sets forth a new Chapter Four guideline at §4C1.1 (Adjustment for Certain Zero-Point Offenders).  New §4C1.1 would provide a decrease of 2 levels from the offense level determined under Chapters Two and Three if the defendant meets all of the following criteria: (1) the defendant did not receive any criminal history points from Chapter Four, Part A; (2) the defendant did not receive an adjustment under §3A1.4 (Terrorism); (3) the defendant did not use violence or credible threats of violence in connection with the offense; (4) the offense did not result in death or serious bodily injury; (5) the instant offense of conviction is not a sex offense; (6) the defendant did not personally cause substantial financial hardship; (7) the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (8) the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights); (9) the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and (10) the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

https://www.ussc.gov/sites/default/files/pdf/amendment-process/reader-friendly-amendments/20230405_prelim-RF.pdf.

in a working family environment where financial struggles arose from health issues faced by his father, who passed away just three weeks ago. (Lawrence had funded his father's nursing care for several years and remained close with his father; funeral services have not yet been conducted.)

Lawrence has lived in South Florida since he was nine years old. He graduated from Palmetto High School, then went to college on a wrestling scholarship at the University of North Carolina (Greensboro). At college, his interest in providing health care to others developed from his experiences as an athlete and his interactions with supportive friends and family. Lawrence is the eldest of three children, all brothers, and was the first of the three to choose health care as his professional goal. His two brothers have followed him into the health care field and stand by him wholeheartedly. His family has remained hard working, and his siblings have followed him in succeeding educationally and professionally.

Lawrence is a father (of sons Nathaniel, 20, and Derek, 6)[2] and a surgeon, whose success in his profession has come from performing complex health-restoring operations on the spine and serving in teaching, mentoring, and other valued medical-surgical roles at excellent medical centers, including the Cleveland Clinic, since obtaining his medical degree from New York University and engaging in post-graduate work at the University of North Carolina (Chapel Hill).

Lawrence's patients' praise for his dedication and successful results as an orthopedic

---

[2]   From a very young age Lawrence was diagnosed as being on the autism spectrum. His son, Nathaniel, faces that same condition, but, like his father, he is overcoming it and is presently in college. *See* PSI ¶¶ 118–19.

surgeon, specializing in spinal surgery, is well known in the community and is attested to in letters submitted to the Court.  *See* Appendix (sentencing letters), attached.  Lawrence's patients, coworkers, family, and friends offer the best view of his personal characteristics. His sister-in-law, Lexi Alexander, relates how the family has found it difficult to reconcile the charge with the person they know; she has seen Lawrence as a "dedicated physician" and hopes that "he can return to his family and continue providing service to clients in need."

Lawrence's mother describes how he saved her life when she had a heart attack, for which she needed eight stents to produce blood flow.  She knows him as "a healer, a son, a father, a caring human being."  A friend, Eric Feldman, notes that in circumstances where payment was unavailable, he "has graciously waived his surgical fee, and assisted my office in convincing the surgical center and anesthesiologist in waiving theirs.  He is always available to see patients for a follow-up appointment without charge, or to answer their questions or give advice on their medical diagnoses and/or prognosis."  Attorney Lee Friedland explains that he has seen Lawrence provide testimony regarding injured patients and that "we would find his testimony, both on and off the record, reflecting the reality of the injuries with a sense of fairness appreciated by the Defense bar."  He sums up his view of Lawrence:  "What marks our two-decade relationship is his decency and caring when it comes to patient care.  Often at personal expense, Dr. Alexander would go above and beyond without concern for financial remuneration to assure that patient care was foremost."

LaToya Friday, whose son was injured and needed care, says he has "a very kind heart."  "He facilitated and provided care for my son on his own time.  He was truly an angel and God send [and] continued to check on my son and his progress over the years."  Lisa

4

Carroll, a friend for more than ten years, describes him as "always kind and generous to his co-workers, family and friends" and has observed his concern for his patients.

Matthew Alexander, Lawrence's brother, speaks of "35 plus years of experiences and situations that we have worked and helped one another through" and of Lawrence's carrying on in a "profession in which the slightest error is catastrophic and very possibly fatal. This is a role he has burdened himself with for years to provide care and relief to people in desperate need of help." On a personal level, Lawrence "has always been a present and loving uncle to my two children. Lawrence has even been a beacon for his friends around him to the possibilities that can come from dedicating yourself to a goal and working tirelessly towards that mark, even if that goal is one of the most difficult to attain."

Reverend Robert Morrow of LifePoint Church in Sunrise, Florida, has seen "a meaningful change in [Lawrence's] life over the past few years." Rev. Morrow relates:

> He has been faithfully attending church services weekly and committing to weekly accountability and spiritual support meetings with me. He has also had an incredibly positive impact on this community. He has donated both time and resources to better our community and the people of Broward County. He has specifically been a major influence in helping to be a part of a launch of a non-profit organization called ECHO (Everyday Christians Helping Orphans) that provides tangible needs to kids and families that are in foster care and adoptive care in Broward County. We view Dr. Alexander as a positive influence and contributor to this community and we are grateful for him and his family. I will personally continue weekly meetings with him to help encourage him and keep him accountable in moving forward in his life for the better.

Lawrence's efforts to help provide care extend to his time in college in Greensboro. While in college, he became close with the family of Judith and Wes Murray, through church

5

involvement.  Michael Murray, a young teenage son of the Murrays during Lawrence's college years, saw Lawrence as a big brother who helped Michael come to be more understanding of the health problems faced by Michael's father and who helped turn Michael away from bad influences.  Michael saw the caring instinct in Lawrence throughout Lawrence's college years and he credits Lawrence with helping to make Michael successful. Michael now works in a governmental position assuring quality care for the disabled.

> *Need for the Sentence to Reflect the Seriousness of the Offense, Promote Respect for the Law, and Provide Just Punishment*

The focus of Lawrence's professional life has been providing relief for spinal injuries. While so many who suffer such injuries turn to addictive drugs to fight pain—with painkiller prescriptions now a leading cause of death in this country—Lawrence's surgical intervention commonly involve providing permanent relief from debilitating pain, and in that way has helped curb opiate abuse by reducing or eliminating the need for the pain medication.  Today, widespread prescription opiate abuse is recognized in much the same serious way that heroin addiction was viewed decades ago.  But today, with heroin-like pills so accessible, the problem is even greater and more pervasive.  Lawrence has spent his professional life on the right side of that fight, and his patients have responded with praise and appreciation.

The tasks of imposing just punishment and promoting respect for the law are related. The First Circuit in *United States v. Prosperi*, 686 F.3d 32, 48 (1st Cir. 2012), presaging the new guideline amendment to U.S.S.G. § 4C1.1, approved of the district court's reasoning that there is inherent punishment to a person who is part of the criminal justice system for the first time, and that where the defendant has shown that there is no reason to believe the first

experience with the criminal justice system will be repeated, leniency is warranted. This Court may also consider loss of profession and reputation when determining a fair sentence. *See*, *e.g.*, *United States v. Gaind*, 829 F.Supp. 669, 671 (S.D.N.Y. 1993) (granting downward departure where defendant was punished by the loss of his business). As a result of this prosecution, Lawrence's lifelong profession and calling may no longer be available to him no matter the sentence imposed.

Under 18 U.S.C. § 3353(a)(2)(B), consideration must be given to the need for the sentence to afford adequate deterrence in the context of the case. Research studies show that, at least in some cases, the severity of punishment does not have as much of a general deterrent effect on crime as the fact of being apprehended and prosecuted. Under 18 U.S.C. § 3553(a)(2)(C), the Court must weigh the need to protect the public from further crimes of the defendant. But general studies, and the past four years of Lawrence's life, show that he is the type of person who is least likely to again face criminal accusations. According to a United States Sentencing Commission report, people are less likely to have new criminal conduct when they fall into the following categories: when they have stable, loving and supportive relationships; are college graduates; are sentenced under the fraud guidelines; are non-violent offenders; are first time offenders; are employed; and are non-drug users. Lawrence fits squarely within these categories.

More generally, there is recognition that the harsh sentences recommended by the guidelines for white collar offenders are not backed by empirical support. When "Guidelines do not exemplify the Commission's exercise of its characteristic institutional role," because the Commission "did not take account of empirical data and national experience," the

sentencing court has the discretion to conclude that the guideline "yields a sentence 'greater than necessary' to achieve Sec. 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 109-10 (internal citations omitted).  In a recent fraud case in this district, the court recognized that "[t]he Sentencing Guideline applicable to this case, §2B1.1, was not based upon empirical evidence.  The lack of empirical evidence supporting guideline 2B1.1 weighs in favor of varying from the suggested sentence produced by the fraud loss table." Doc. 459 at 10, *United States v. Javat*, Case No. 18-CR-20668 (S.D. Fla. Dec. 17, 2019) (Middlebrooks, J.).  In another recent high-loss economic crime case in this district, the court commented at sentencing: "[T]he guidelines are, you know, I think draconian is understating it.  The guidelines are ridiculous.…I don't see any… defendants that could live long enough to do the time that is considered by the guidelines."  Sentencing Tr. at 3-4, Doc. 569, *United States v. Kallen-Zury*, Case No. 12-CR-20757 (S.D. Fla. 2013) (Martinez, J.).

Lawrence urges that the Court consider all of the above factors in analyzing how strongly the offense of conviction weighs in favor of various sentencing choices: Lawrence's core professional goals that have defined his life, doing good work for the health of the community, have been his focus; he now faces the loss of his practice and will suffer a personal loss of enormous significance in that regard entirely apart from the sentence itself, in that losing the ability to be an orthopedic surgeon is understandably devastating; and the reports provided by those who know him at sentencing show a different and important side of Lawrence, having helped to turn lives around with surgery and caring, where in many cases, Lawrence has obtained outcomes for his patients that meet or exceed what any other surgeon could have produced.

Ultimately, this Court is asked to vary downward in the context of this case. *See Pepper v. United States*, 562 U.S. 476, 490 (2011); *Spears v. United States*, 129 S.Ct. 840, 843 (2009); *Kimbrough*, 552 U.S. at 101-02.

CONCLUSION

Lawrence Alexander is utterly ashamed to have sullied his life by his involvement in the brace business with Waxman. Waxman, being the mastermind, kingpin, and criminal dynamo in this case, adept at manipulation, the leader who was led by his own greed to capture millions in fraud proceeds about which there are still unanswered questions, was able to take advantage of his position and deservedly received a significant sentence. But there are substantial questions regarding whether a prison sentence is necessary for Lawrence.

As the character letters submitted on Lawrence's behalf demonstrate, his accomplishments in helping turn injured lives around have had a richness far greater than any financial reward. As the letters note, much of his work was done without claim for payment or consideration of benefit to himself.

In fashioning a fair and reasonable sentence for Lawrence Alexander, the individual circumstances outlined above; the requirement that the sentence may not be greater than necessary to achieve the purposes of sentencing under § 3553; and the totality of the circumstances of the case, where years of life-saving, and health-saving, work by Lawrence Alexander has had both individual and societal benefit, including in the years since the offense, warrant a non-imprisonment sentence that will permit him to contribute positively to society.

Respectfully submitted,

JOSE M. QUINON, P.A.
Attorney for Lawrence Alexander
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel: (305) 858-5700
Fax: (305) 358-7848


By: /s/ *Jose Quiñon*
      JOSE QUIÑON
      Fla. Bar No. 201944


QUINTERO BROCHE, P.A.
Attorneys for Lawrence Alexander
75 Valencia Avenue, Suite 800
Coral Gables, Florida 33134
Tel: (305) 446-0303
Fax: (305) 446-4503


By: /s/ *Frank Quintero, Jr.*
      FRANK QUINTERO, JR.
      Fla. Bar No. 39916


RICHARD C. KLUGH, P.A.
Attorney for Lawrence Alexander
40 N.W. 3rd Street, PH 1
Miami, Florida 33128
Tel: (305) 536-1191
Fax: (305) 536-3170


By: /s/ *Richard C. Klugh*
      RICHARD C. KLUGH
      Fla. Bar No. 305294

February 17, 2023

To Whom it May Concern,

This letter is in reference to Dr. Lawrence Alexander.  I wanted to send a letter on his behalf letting the court know that I, Reverend Robert Morrow Jr. have known Dr. Alexander for over two years. He has been a consistent attendee at LifePoint Church in Sunrise, FL. I have met with Dr. Alexander weekly for the past year. I am very aware of the current situation that he is in and facing, yet I believe that there has been meaningful change in his life over the past few years. He has been faithfully attending church services weekly and committing to weekly accountability and spiritual support meetings with me.

He has also had an incredibly positive impact on this community. He has donated both time and resources to better our community and the people of Broward County. He has specifically been a major influence in helping to be a part of a launch of a non- profit organization called ECHO (Everyday Christians Helping Orphans) that provides tangible needs to kids and families that are in foster care and adoptive care in Broward County.

We view Dr. Alexander as a positive influence and contributor to this community and we are grateful for him and his family. I will personally continue weekly meetings with him to help encourage him and keep him accountable in moving forward in his life for the better.

Thank you for your time and consideration in this matter. We appreciate all that you do. If you have any other questions or need to contact me, please feel free to reach out to me via email at lifepoint6@gmail.com or by phone at 954-423-2277.

Sincerely,

Reverend Robert K. Morrow Jr.

Lead Pastor

LifePoint Church

89000 NW 44th Street

Sunrise, FL 33351

www.cometolife.tv

Honorable Judge Moore,

My name is Matthew Alexander, I am Lawrence Alexander's brother. I am writing in hopes to provide a small insight into the person and character of Dr. Lawrence Alexander. This letter comes in light of the recent events and events upcoming. I do not posses a expert grasp of the law and the courts workings, so I will refrain from speaking on those aspects of this matter. I do however feel a great indicator of a persons ability to speak on a situation, or circumstance, is based heavily on a persons experience and working knowledge of the given situation. In this case that is my brother.

   My experience dates back over 35 years with Lawrence. 35 plus years of experiences and situations that we have worked and helped one another through. Experiences that cannot be simulated and tend to transcend expression through written word, but I will still attempt to do so.

   Lawrence has always been a person that has been at the ready to help and do right by those around him without any expectation of reciprocity. From taking his off days to help me set pavers by hand at my first home, to offering to host my wedding rehearsal when he heard we decided to forgo the tradition for various reason. Gestures and actions that were never asked of him, on the contrary, they originated from him. Lawrence was and will continue to be a symbol to myself and those who surround him of hard work and dedication. Unfortunately, with the events that have transpired he is now also a stark reminder of how trust can sometimes deceive us and ferry us into perilous waters. If that trust gets even slightly misplaced, the consequence and aftermath can last an eternity.

   Lawrence worked to exhaustion for over two decades to establish himself as a highly skilled and professional care giver. I witnessed these efforts firsthand. A physician and surgeon of who works within the most delicate and finest of margins, in a field that has no room for error, or lapses in attention. A profession in which the slightest error is catastrophic and very possibly fatal. This is a role he has burdened himself with for years to proved care and relief to people in desperate need of help. With such an extreme responsibility to one's own career, it seems logical to delegate much of what you can to a relevant professional. It is probably an aspect of his life he wasn't an expert in, comfortable with or have the physical time to manage on his own. So, logic tells you set aside your ego and get some help, delegate the task to someone capable. Obviously, if too much trust is placed in said delegated professional and they turn out to be a misguided and misrepresenting person, things can quickly take a wrong turn. The outcome is now apparent, the wrong person was intrusted with the helm and it's lead to a terribly unfortunate situation. A gross anomaly and byproduct of humanities trust paradigm.

   Aside from Lawrence's professional dedication and accomplishments he is a vital and loved member of our family. Lawrence has been a brother that I can look at for motivation, advice, support and proof. Someone who has never thought twice to lend a hand. He is a good and caring father to his two sons. He has always been a present and loving uncle to my two children. Lawrence has even been a beacon for his friends around him to the possibilities that can come from dedicating yourself to a goal and working tirelessly towards that mark, even if that goal is one of the most difficult to attain. If that is looking past naysayers along the route to your cause, then so be it. He stood as the proof.

   From these last 30 years of knowing my brother, I can honestly say that the few details I have heard about this situation are inexplicably out character for Lawrence. For me to rationalize what I am hearing, as opposed to what I have seen over the duration of Lawrence's life doesn't compute.

   For Lawrence, an individual that has never taken a shortcut in their life, to risk it all for what appears to be some type of shortcut is a situation that is drastically out of character. The situation he has found himself in, disagrees with the resume of the individuals accomplishments. It contradicts his 40 plus years of actions as a father, a son, a brother and a freind.Nevertheless, that is something my family will have reconcile over time. My brother chose to procalim his innocence and be judged by GOD and country. The day for judgement by country has come and gone. We stand today where we are and this is the situation my brother and family find ourselves in. I stand firm in my beliefs and value of my experiences over these years with my brother.

   My purpose in this letter was to give some insight into my brother and ask for leniency in sentencing. I ask this in hope that someone who has worked so hard, over so many years to accomplish so much, be given the opportunity to try and begin picking up and repair what has been lost. Be able to be with his children and family to begin rebuilding what has been broken. I humbly request you allow our family to begin to rebuild. A minimum sentence, for someone who in my eyes could have only had a

March 1, 2023

Honorable Judge K. Michael Moore
United States District Court

    Subject:  Lawrence Michael Alexander

    My son, Lawrence Alexander, has come before you in one of the saddest times in our lives.

    Lawrence is a young man who has overcome so much in his life. A young man with few friends and a family that looks up to him.

    Lawrence came home to Miami on completion of his training at the Cleveland Clinic in Ohio. That weekend I would have my heart attack and Lawrence's training as a medical doctor saved my life. I now have eight stents in my heart and I am able to get on with driving.

    Lawrence is a poet and has from the eighth grade written and has won awards; he loves solitude where he is able to read.

    I was born in this village high in the hills of Manchester, Jamaica. I was given up before age two, and raised by my father's mother. My mother, Eljander Powell was 16 years old and my father 17 years; my mother was unable to take care of me.  My mother, who, at such a young age, had the courage to save my life, would die in her 30's, leaving six children which we found out because a notice on the computer would lead us to them, a lifetime of looking.

    My son Lawrence, along with his son, Nate, took me to the village to meet my family, and stand on the land where I was born, and my mother buried, a peace that surpasses all understanding, a calm of finding one's self.

    Sir, this is a good young man with a soft heart, he looks like me and I look like my mother. He is a Powell, a McNamee, and his given name, Lawrence Michael Alexander carries that forward.  The Powell side of the family is the same as that of Colin Powell, who became Secretary of State and is a cousin.

    Sir, as you look at him, please see the young man who has been trained to be a healer, a son, a father, a caring human being.

    Thank you Sir, for allowing me to write to you. Thank you Sir, for reading this and getting to know a little part of this young man, my first son.


        Sincerely,

        Susan Alexander

March 2, 2023

RE: Dr. Lawrence Alexander

To The Honorable Judge K. Michael Moore,

I trust you are doing well.

Thank you for your time and for this opportunity to share a few words about a very special young man who I have known from he was a child, Dr. Lawrence Alexander.

It is an honor to write this letter on behalf of Dr. Lawrence Alexander at the request of his mother who is one of my dearest friends, a relative by marriage. I have known the family ever since I got married almost forty years ago and known Lawrence for over 30 years. Dr. Alexander is my husband's cousin. From the first time I met this young boy I was intrigued with his intellect and admired how mature and reserved he was as opposed to his more rambunctious brothers. Lawrence was a very bright young man and shy. In a million years, I never thought something like this would have ever happened to Lawrence.

Lawrence grew up in a family that struggled to make ends meet. His father was not the most patient person. His mother was the breadwinner in the family and worked very hard to pay the rent, keep the lights on, and put food on the table for Lawrence and his two younger brothers. Lawrence's parents stressed the importance of getting a good education and the value of being decent and kind. By example, they taught Lawrence to be a person of integrity, to care for others, and to have good manners.

Lawrence was not a big talker. He was rather reserved. He had only one friend growing up that I knew of during all those years of his middle and high schools, and they are still very close friends today. The reason I wanted to highlight this is because Lawrence did not trust others easily. He was a very deliberate type of person, would think through things carefully, and was very cautious about who he trusted. So, the fact that he trusted this individual who apparently took advantage of him and others says to me that this individual did an excellent job at deceiving Lawrence. Lawrence trusted this person. Lawrence hung out with him like friends and this person took advantage of him and others.

Lawrence was not the type of person who got in trouble when he attended middle and high school. He paid attention and stayed focused on his task, his schoolwork. I remember his father

telling me how Lawrence would come home after school and help him work in the garage. His father worked on repairing woodwork in expensive cars and his father used to say Lawrence had such a steady hand. I believe that is part of why he did so well as a spinal surgeon and was highly esteemed among his colleagues. Lawrence is brilliant, he is focused, and in addition to his many arduous years of studying, he has a steady hand. He has worked extremely hard to build a reputable business and has made a difference in the lives of many people in the community by utilizing his incredible surgical talents and abilities.

I know Lawrence Alexander. I have known him practically all his life. And I know he would not intentionally get involved in anything deceptive. He is a person of integrity and would be too scared to do anything unethical. For all the years I have known him, he was a "stay on the straight and narrow" kind of a guy.

One of the things I will never forget that Lawrence did for me…

I went back to school to get my doctoral degree later in life. I remember one incident when I was feeling distraught and discouraged because the Ph.D. journey was so difficult. A professor had told me I was not going to make it in the doctoral program. This was particularly devastating because my husband's entire family had already cut me out of the family for trying to further my education. They said I was arrogant and asked, "who does she think she is to go and get a PhD?"

Despite this, Dr. Lawrence Alexander believed in me, encouraged me, and supported me. Lawrence always took an interest in my studies. He would constantly ask me how I was doing and would tell me I could do it and not to let anyone discourage me from accomplishing my dream. I don't believe I would not have completed my studies without Lawrence's support. It was a significant time during that difficult journey, a pivotal moment, and without that voice telling me I could do it, I don't think I might have finished.

Lawrence Alexander came from a poor, hardworking family. He was the pride and joy of his entire family and they had put all their hopes and dreams in him. Now, instead of celebrating his incredible success and accomplishments, the worry and stress of this situation have brought his mother closer to her death. Lawrence's older son has also been distraught over his father's situation. Lawrence Alexander is a good man, a good partner, a good father to his two sons, one son is just a young boy. This situation has cost Lawrence way more than he could have ever imagined. He has paid a huge price already and I believe he has learned his lesson.

I have been by his mother's side many times during these last several months crying with her and praying for her son, Lawrence Alexander. This whole awful situation has brought Lawrence's mother to her knees, she loves him so, and I fear, without your pardon, this may take her to her grave.

I wholeheartedly support this young man, Dr. Lawrence Alexander and believe him to be a person who is honest and trustworthy. Please feel free to reach out if I can answer any questions or be of any further assistance.

Sincerely,

*Cherelle Carrington*

Cherelle Carrington, Ph.D.

**F FRIEDLAND**
& ASSOCIATES

Phone: **800-95-INJURED**  |  Broward: 954-321-8810
Dade: 305-324-6614  |  Orlando: 407-734-4106

www.yourfightourbattle.com

February 16, 2023

To whom it may concern:

Please consider the following missive on behalf of Lawrence Alexander a business associate with whom my firm worked over the past twenty (20) years. Although an ally in helping injured individuals achieve judicial fairness – Dr. Alexander is remarkable in his even-handed approach. Oftentimes, we would find his testimony, both on and off the record, reflecting the reality of the injuries with a sense of fairness appreciated by the Defense bar. What marks our two-decade relationship is his decency and caring when it comes to patient care. Often at personal expense, Dr. Alexander would go above and beyond without concern for financial renumeration to assure that patient care was foremost.

Patients who needed visits or required access to Dr. Alexander, or his team, marveled at his accessibility and openness. Often I find myself explaining to my clients the nuances of medical care to the best of my ability – yet when Larry was involved no such conversations were necessary as all medical procedures and expectations were discussed and reviewed. I gained an understanding of the allegations against Dr. Alexander which fly in the face of everything we know about Dr. Alexander and his practice. The number of hours he dedicated to achieving his goal of becoming an orthopedic surgeon and the needs of his resultant practice would militate against any time to engage in nefarious or intentional acts. With no personal knowledge as to the allegations asserted, I would simply express that this is a man who devoted himself to patient care at every level of his life. We trust that justice will allow for him to return to this calling for the benefit of not Dr. Alexander – but our community.

Very Truly Yours,

Lee Friedland

LF/eb

707 NE 3rd Ave, Suite 201
Fort Lauderdale, FL 33304

225 Southern Blvd, Suite 101,
West Palm Beach, FL 33405

5323 Millenia Lakes Blvd.
Suite 300, Orlando, FL 32839

3/3/2023


To Honorable Judge K. Michael Moore,

I am writing this letter to advocate for the minimal sentencing to be appointed to Dr. Lawrence Alexander. My name is Dr. Lexi Alexander. I am Dr. Lawrence Alexander's sister-in-law. I have known Lawrence for over 15 years. I know him as a highly intelligent, intentional, and dedicated physician. I have no personal association with his businesses and cannot attest to any personal information related to the trial. I can, however, affirm that he is a reputable man. His wealth and success are, to my knowledge, a testament to his hard work, focus, and dedication to the field. It is terribly unfortunate that he has found himself in the current position. Knowing the years of work he has invested in building his practice, it seems highly unbelievable that he would risk it all by committing the offenses he has been accused of. Instead, it is likely the case that he became associated with, and exploited by, an individual pursuing him with mal-intent.  As such, I implore you to sentence him with minimal time such that he can return to his family and continue providing service to clients in need.

Thank you for your time and consideration.


Sincerely,

Lexi Alexander, PhD



ERIC B. FELDMAN, ESQ.
MATTHEW H. BARON, ESQ.
CYNTHIA VENTURA, ESQ.

DAVID F. BARON, ESQ.
OF COUNSEL

100 Almeria Avenue • Suite 330
Coral Gables, FL 33134
(Tel): 305.443.5235
(Fax): 305.443.4293
ericbfeldman@hotmail.com

RE:   <u>United States v. Lawrence Alexander</u>
      Case No. 21-CR-60253-KMM

To the Honorable Judge Moore:

Please be advised that I have known Dr. Lawrence Alexander in both a personal and professional capacity for the past four (4) years. I am a practicing attorney here in Miami-Dade County since 1979, and handled federal criminal cases for approximately thirty-five (35) years. I am aware that Dr. Alexander was found guilty by jury of the crime of making false statements relating to health care matters.

Lawrence Alexander is one of the most caring, compassionate physicians with whom I had the pleasure of associating in my recent years of practice representing injured individuals in their cases. Dr. Alexander has treated approximately fifty (50) or more of my clients with excellent medical results and absolutely no complaints. On some occasions, the personal injury case does not lead to a recovery, and Dr. Alexander has graciously waived his surgical fee, and assisted my office in convincing the surgical center and anesthesiologist in waiving theirs. He is always available to see patients for a follow-up appointment without charge, or to answer their questions or give advice on their medical diagnoses and/or prognosis.

I respect that a jury has found him guilty of this single charge, and I am well aware that the Federal Sentencing Guidelines provide this Court with recommendations, and realizing how significant the possible sentence could be, I sincerely hope that this Honorable Court takes into account Dr. Alexander's life, work, and good deeds, and that this warrants a low sentence.

If I can be of any further assistance to this Court, please do not hesitate to contact me.

Respectfully Submitted,

ERIC B. FELDMAN

To the decision maker:

My name is LaToya Friday, and I have know  Lawrence Alexander  for at least 8 years. I know Dr. Alexander on a professional level, but have also had the pleasure of knowing him on a personal level(when he helped me with my son). Dr. Alexander has always presented himself to me as the consummate professional. He has demonstrated integrity while caring for his patients, and takes extra time with them to ensure their understanding of procedure.
Dr. Alexander helped me with my teenage son, (that was new to Florida) when he was injured. He facilitated and provided care for my son on his own time. He was truly an angel and God send in that situation. Dr. Alexander also continued to check on my son and his progress over the years. He has always been a pleasure to work with and to be around.
It was very unfortunate to learn of Dr. Alexander's troubles with the law, for I have always found him to be an upstanding person and having a very kind heart. I will attest to Lawrence Alexander's moral character to be one of integrity.

LaToya Friday

February 16, 2023

To whom it may Concern:

I am genuinely honored to write this letter on behalf of Lawrence Alexander, whom I have known for over ten (10) years as a caring physician, son, dad, brother and friend. I was surprised when I first heard about his case as he has always been a solid person. It is for this reason I am happy to write this letter of reference for Lawrence Alexander regarding this matter. I understand the seriousness of this matter and hope the court can see the man Lawrence is.

Lawrence has always been a very professional physician at our surgical center. I have seen Lawrence grow and mature as a professional thru the years in his career, putting a lot of hard work and dedication into becoming successful. In that time, we have formed a great relationship as professional co-workers and friends. In our friendship, he has been there for me as a kind and loving friend.

Lawrence has shown himself to be an intelligent man with a good character. He is always kind and generous to his co-workers, family and friends. He has a strong sense of duty which is seen by how he takes care of his family. Lawrence shows a great deal of integrity and always follows the advice and wisdom of co-workers when taking care of patients showing how he puts safety for his patients above all else.

I hope the court will review this letter and understand through these words that Lawrence is a kind person who people willingly rally around and support showing his good character. This character trait hopefully can convince the court how much he is needed by all his family and family and that he has a large support system to rely on.

Thank you for allowing me to put into words what a good person Lawrence is and hopping this can be a factor in your decision.

Sincerely,

Lisa Carroll